UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MIKE HULL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:07-0680 |
| ) | Judge Echols |
| ) | |
| ENERGY AUTOMATION SYSTEMS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Defendant Energy Automation Systems, Inc. ("EASI") filed a Motion for Summary Judgment (Docket Entry No. 8), to which Plaintiff Mike Hull filed a Response (Docket Entry No. 12), and EASI filed a Reply (Docket Entry No. 14.)

## I. FACTS

EASI is a company located in Hendersonville, Tennessee. EASI claims that it sells dealerships and energy savings equipment to individuals and companies throughout the world.

Mike Hull is a resident of Sedro Wolley, Washington. He began investigating the purchase of an EASI dealership in June 2003. Hull spoke with EASI's founder and Chief Executive Officer, Joseph Merlo more than once. Hull then registered to attend the next available EASI training seminar in Hendersonville. During the week of EASI training, Hull had the opportunity to ask questions , but he could not recall any specific questions he asked. On August 1, 2003, on the final day of the weeklong training program, Hull paid $39, 875.00 to EASI to purchase a dealership. Hull and an EASI representative signed an Authorized Dealer Agreement on that date.

In the six months that followed, Hull called one prospective customer and completed one energy survey for another prospective customer, but he did not sell any EASI products to customers.

Hull continued to operate his Washington cattle ranch during his tenure as an EASI dealer. By March 2004 Hull ceased making efforts to serve as an EASI dealer. On March 15, 2004, Hull wrote a letter to Merlo expressing concerns about the EASI dealership, but Hull did not receive a response to his letter from Merlo or from anyone else affiliated with EASI.

On February 17, 2005, Hull filed suit against EASI in Sumner County Circuit Court alleging claims for fraud, breach of contract and violation of the Tennessee Consumer Protection Act ("TCPA"). Hull acknowledges that the same facts which support his fraud claim also support his TCPA claim. Although the record is not entirely clear, it appears that Hull took a voluntary non-suit of his state case in approximately April 2007, and on June 26, 2007, he filed a nearly identical lawsuit against EASI in this Court raising the same legal claims.

EASI now seeks summary judgment on all three claims. EASI contends that, during a deposition, Hull failed to identify any specific misrepresentations of existing fact that EASI made to him to support a fraud claim or a TCPA claim. EASI also asserts that Hull failed to identify a specific factual basis to support his breach of contract claim. Finally, EASI contends that Hull's TCPA claim is time-barred and the claim is not saved by the Tennessee savings statute.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there is not a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson

2

v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III.  ANALYSIS

**A.  The TCPA claim is timely brought**

The Court first addresses EASI's argument that Hull's TCPA claim is time-barred. The TCPA creates a private cause of action for those who suffer a monetary or property loss resulting from any unfair or deceptive act prohibited by its provisions. Tenn. Code Ann. § 47-18-109. The TCPA includes a one-year statute of limitations, which commences to run "from a person's discovery of the unlawful act or practice[.]" See Tenn. Code Ann. § 47-18-110; Heatherly v. Merrimack Mut. Fire Ins. Co., 43 S.W.3d 911, 916 (Tenn. Ct. App. 2001); Mackey v. Judy's Foods, Inc., 867 F.2d 325, 328 (6th Cir. 1989) (applying TCPA statute of limitations). Under the discovery rule, a cause of action accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the wrongdoing. Stanbury v. Bacardi, 953 S.W.2d 671, 675

3

(Tenn. 1997) (cited in Terry v. Community Bank of Northern Va., 255 F. Supp.2d 817, 823 (W.D. Tenn. 2003)); Clifton v. Bass, 908 S.W.2d 205, 209 (Tenn. Ct. App. 1995) (cause of action is discovered when the plaintiff knows that he has been injured and who caused the injury).

Hull initially filed suit against EASI in Sumner County Circuit Court on February 17, 2005. Hull filed the original Complaint less than one year after he sent a letter to Merlo raising his concerns about the EASI dealership. Later, Hull voluntarily dismissed his state court suit in approximately April 2007. EASI agrees that Hull filed the instant suit in federal court within two months, on June 26, 2007, but EASI contends that the TCPA claim is now barred because more than one year elapsed between March 2004 when Hull wrote the letter to Merlo and June 26, 2007, when the federal lawsuit was filed. EASI contends that the Tennessee savings statute, Tenn. Code Ann. § 28-1-105 does not save Hull's allegedly untimely claim because the TCPA creates both a right to pursue claims defined in the TCPA, as well as the remedy for violations of the TCPA. Tenn. Code Ann. §§ 47-18-104 & 47-18-109. Citing Automobile Sales Co. v. Johnson, 122 S.W.2d 453, 456-457 (Tenn. 1938), and Lynn v. City of Jackson, 63 S.W.3d 332, 337 (Tenn. 2001), EASI contends that the savings statute does not apply to save an untimely claim where the statute in question provides for both the right of action and the remedy for violation of the statute.

The Tennessee Supreme Court rejected a similar argument in Cronin v. Howe, 906 S.W.2d 910, 914 (Tenn. 1995), characterizing as "misplaced" the defendant's argument that the savings statute did not apply where the statute creating the right also set a time limit in which to exercise the right. The court distinguished Johnson because that case involved a suit against the State. Id. The court reasoned that suits against the State may be maintained only as authorized by the statutes, such statutes permitting suits against the State must be strictly construed, and general procedural statutes do not apply against the State unless the State is specifically named in the statutes. Id. The court

4

limited Johnson's "broad statement regarding the application of the savings statute . . . to the context in which it was made"–that is, concerning statutes authorizing suits against the State or other governmental entities. Id. The court ruled that Johnson did not apply in the private cause of action for medical malpractice then pending before the court. Id.

In Harvey v. Allstate Ins. Co., 2004 WL 3142224 at *3 (W.D. Tenn. Aug. 23, 2004), a Magistrate Judge in the Western District of Tennessee recommended that the Tennessee savings statute should be applied to permit a litigant to add a TCPA claim when he filed a federal lawsuit within one year after taking a voluntary non-suit in a Tennessee state case that did not include a TCPA claim. The Magistrate Judge relied on Moore v. Fields, 464 F.2d 549, 550 (6th Cir. 1972), and Bailey v. Harris, 377 F.Supp. 401, 403 (E.D. Tenn. 1974), to conclude that the savings statute applied to permit the filing of the TCPA claim in the federal lawsuit where the averments in the original state complaint and the subsequent federal complaint were substantially identical. Id. at **3-4. Applying the same analysis to the private cause of action before her, the Magistrate Judge recommended that the plaintiff's TCPA claim should be viewed as timely filed by operation of the savings statute. Id. at *4.

The analyses in Cronin and Harvey are instructive here. This lawsuit is not brought against the State, but rather against a private company. The Johnson case cited by EASI is inapposite. Hull's initial Complaint filed in state court within the TCPA's one-year statute of limitations is virtually identical to the subsequent Complaint filed in federal court. Hull included a TCPA claim in both Complaints. Hull filed the federal case just two months after he took a voluntary non-suit in state court. Thus, Hull's TCPA claim was initially filed in a timely manner in 2005, and the dismissal of the state court suit and the re-filing of the federal suit were accomplished within the

one-year period granted by the savings statute. Hull's TCPA claim is timely brought in this Court and, consequently, EASI's motion for summary judgment on this ground will be denied.

**B. Hull's claims for fraud, violation of the TCPA and breach of contract**

EASI next contends that Hull cannot support his legal claims with facts. Under Tennessee law, the elements of fraud or fraudulent misrepresentation are: (1) an intentional misrepresentation with regard to a material fact; (2) made knowingly and with a fraudulent intent; (3) upon which the plaintiff reasonably relied and suffered damage; and (4) which relates to an existing or past fact or, if the claim is based on promissory fraud, the misrepresentation embodied a promise of future action without the present intention to carry out the promise. First Nat'l Bank v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991); Stacks v. Saunders 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). The terms, "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 904 n.1 (Tenn. 1999). EASI contends that Hull cannot identify a single misrepresentation to support his fraud claim and Hull's general descriptions of fraud all relate to future, not existing, facts.

The TCPA does not define the terms "unfair" and "deceptive"; however, whether a specific representation is "unfair" or "deceptive" is a question of fact. Tucker v. Sierra Builders, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005). "The broad phrasing of the statute suggests that, at the very least, the terms 'unfair' and 'deceptive' should not be limited to a set of specific acts that can be readily catalogued in a judicial opinion or otherwise." Id. A "deceptive" act or practice is "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." Id. Thus, the essence of deception is misleading consumers by statements, silence or actions. Id. "The concept of unfairness is even broader than the concept of deceptiveness, and it applies to various abusive business practices that are not necessarily deceptive." Id. An act

or practice can be labeled as "unfair" if it "'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" Id. at 116-117 (quoting 15 U.S.C.A. § 45(n).) To be considered "substantial," consumer injury must be more than trivial or speculative. Id. at 117. EASI contends that Hull's TCPA claim fails for the same reasons his fraud claim fails.

The essential elements of any breach of contract claim are: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of contract; and (3) damages caused by the breach. Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. Partnership, LPIMC, Inc., 79 F.3d 496, 514 (6th Cir. 1996) (cited in Custom Built Homes v. G.S. Hinsen Co., 1998 WL 960287 at *3 (Tenn. Ct. App. 1998) (unpublished)). Parties to a contract owe each other a duty of good faith and fair dealing in the performance of the contract. Wallace v. National Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996). Thus, each party to a contract promises to perform its part of the contract in good faith. Id. EASI contends that Hull has not produced any facts to establish EASI's breach of the Authorized Dealer Agreement.

As EASI points out, at several critical points in the deposition, Hull stated that he could not identify specific instances of EASI's fraudulent conduct. Reading the deposition in a light most favorable to Hull, as the Court must do on motion for summary judgment, however, it appears to the Court that Hull was not well-prepared by his attorneys to be deposed, which was his first such experience. Hull often reacted as if he did not understand the purpose of the deposition and his role in it. Also, Hull sometimes seemed surprised or overwhelmed by the questions posed to him by EASI's attorney. EASI's attorneys have supported their summary judgment motion by carefully choosing particular passages from the deposition that are most hurtful to Hull and holding them up as representative of Hull's inability to specify the fraudulent conduct he accuses EASI of

7

committing. However, a fair reading of the entire deposition reveals that Hull believed his business relationship with EASI was based on false representations and fraudulent conduct by EASI.

When asked at the very outset of the deposition to "please list each misrepresentation that you believe was made to you[,]" and "[e]verything that was said to you that you think now was not true when it was said to you[,]" Hull responded: "The – I guess probably the – everything. I mean, the whole – the sales approach that they used. . . . as far as them having a viable product that I could market in my area was false." (Docket Entry No. 13-1, Hull Depo. at 6-7.) When pressed to be more specific, Hull stated:

> Well, one thing I was told specifically is that the major portion of my dealership money was to be able to use EASI's good name, reputation, and vast history of successful sales to dovetail with my business in order to sell their product and my service.
> Once I tried to market that product and service, it very quickly came to my attention that their reputation was ruined in my market area, in the energy conservation community, and that there was no reputation, no amount of hype that they could tell them that would overcome that without going in there and fixing problems associated with failed systems and lawsuits and disgruntled dealers who had tainted their name and product in the energy conservation community.
> So that–I guess that probably sums it up. So whatever they offered [to me] – was false. Joe Merlo told me personally that that's what the money I was giving him was for, and he offered me nothing in return for that.

(Id. at 7-8.) Hull testified that he had verification of Merlo's misrepresentation, although EASI's attorney did not ask Hull to reveal what verification he had. (Id. at 8-9.)

Hull also testified that EASI represented in its sales materials and training that EASI had been in business 25 years, EASI's energy saving products had proven to substantially reduce utility costs to a wide range of businesses, EASI "had supposedly thousands of successful installations in hundreds of countries around the world[,]" and EASI could provide many referrals. (Id. at 9, 49.) Hull stated that "once [he] got involved in it and then they had my money, that their referrals got

8

weaker and weaker and weaker all the time. So – with their admission that the referral network is not what they wanted it to be. So, yes, the referrals are a misrepresentation." (Id. at 9-10.)

When asked to list any other misrepresentations that he claimed EASI made to him, Hull testified:

> The – I guess I probably would take issue with their savings estimates. What experience I had weren't in the realm of what they originally promised.
> So I would say whatever their sales package is was probably inaccurate in total. There was some of it was downright lies, probably. Some of it was gray area. So I guess everything that they say in their marketing materials is false in my estimation.

(Id. at 16-17.) Hull testified that "savings guarantees" meant EASI would estimate an amount a customer could save by using EASI energy conservation products and then EASI would guarantee the savings to the customer through an insurance policy. (Id. at 22.) Hull recalled an incident when EASI represented to him that a heavy industry business would show the greatest energy savings but when he "actually went out and did an [energy savings] estimate for a heavy industry [a sawmill], the savings guarantee was way low of what anybody would be interested in spending an amount of money for in order to get a 4 percent savings on their bill." (Id. at 23.) The energy savings and utility cost reduction numbers Hull heard kept shrinking over time. When he was being recruited, the first number he heard was 30 percent savings; then in training the number shrunk to 15 to 20 percent; then after he entered into the contract and paid his dealership fee "it was like 5 or 10 percent. You know, it kept going away once they got you hooked into it." (Id. at 24.) When Hull contacted EASI and questioned the savings estimate number, "they said, yeah, well, that type of business, that's about all you could expect." (Id. at 23.) Hull stated he could not produce documentation of this incident, but he could testify this is what he was told. (Id. at 24.)

Hull further testified that all of the alleged misrepresentations were made to him before he signed the Authorized Dealer Agreement. (Id. at 25.) Hull did not have an opportunity to speak

9

with Joe Merlo after Hull signed the contract, and all of the false representations that Merlo made to Hull were made before the contract was signed. (Id. at 18-19.) Hull stated that Merlo and other EASI representatives made misrepresentations to him during telephone conversations, in the sales literature and at the training. (Id. at 19-21.) Hull explained that "what was after the fact [of signing the contract] was just information that started to reveal the truth, more than any more deception." (Id. at 35.)

When EASI's attorney asked Hull what he thought EASI did that was unfair, Hull responded:

> Well, I think they play on people's weaknesses and desires to better their own situation while being – doing something worthwhile. And they referred to the win/win situation, where it's good for you, it's good for us, it's good for the company, and it's good for the environment and all that, and it makes it sound really good. And that's how – and they make promises that sound easy but are hard to deliver.
> I just think that they misrepresented what they – what they're offering. I guess that's what I think is unfair.

(Id. at 32.)

Hull testified that EASI breached the contract because "based upon the information I got after the fact, they knowingly led me down this road to get my money without any expectation that I would be able to deliver on my end of it." (Id. at 45.) He believed when he signed the contract that "the other side was as fair as [he] was[,]" and he signed the contract in good faith for a product or service that was not delivered to him in good faith. (Id. at 44.)

Hull's deposition contains other information similar to that highlighted here. Although EASI characterizes Hull's testimony as too conclusory to support claims of fraud, unfair or deceptive conduct under the TCPA, or breach of contract, the Court concludes that Hull has produced sufficient evidence on each of his legal claims to preclude entry of summary judgment in favor of EASI. Hull testified that specific, intentional misrepresentations upon which he relied to his detriment were made to him before he signed an Authorized Dealer Agreement with EASI. Hull's

10

descriptions of the misrepresentations he claims EASI made to him do not relate to future events, as EASI argues. Hull described in sufficient detail the representations of existing fact that Merlo and others affiliated with EASI made to induce Hull to pay nearly $40,000.00 for an EASI dealership and to enter into a contract with EASI to sell EASI energy conservation products to customers. Whether EASI committed fraud, or unfair or deceptive acts under the TCPA, are questions of fact for a jury to determine. It is also for a jury to consider whether EASI breached the contract it executed with Hull, or whether EASI breached the covenant of good faith and fair dealing that is implied in every contract.

## IV. CONCLUSION

For all of the reasons stated, genuine issues of material fact exist for trial on Mike Hull's claims against EASI for misrepresentation, violation of the TCPA, and breach of contract. Hull's TCPA claim is timely brought and the Tennessee savings statute does not bar the claim. Accordingly, Defendant's Motion For Summary Judgment (Docket Entry No. 8) will be denied. This case will proceed to trial as previously scheduled.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

11